GReen, J.
delivered the opinion of the court.
This is an action of assumpsit against the plaintiff ,as the endorser of a promissory note for $4500.
The note on which this suit is founded, was made by Gal-breath, Cromwell & Co., and endorsed for the accommodation of the makers, by John McKeage, Wm. M. Terry, and the plaintiff in error, R. B. Mitchell. The same makers, had a *221 note for $5000, endorsed by McKcage and Terry, which fell due at the branch of the Planters Bank at Clarksville, the 2d of February, 1842. This note for $4500 and $500 in cash, paid by the makers were applied to the discharge of said $5000 note. The note for $4500, when first presented to the bank, was endorsed by McKeage and Terry only: and a check signed by Terry, was handed to the cashier at the time- the note was placed in his hands, the note and check both bearing-date, the 2d of February, 1842, and the date of this note, (on which the name of Mitchell, appears as an endorser) on the books of the bank appears to have been made the 2d of February, 1842.
The defendant below, proved by B. H. Logan, a member of the firm of Galbreath, Cromwell & Co, that on Saturday, the 5th of February, 1842, McLean, then cashier of the bank took the note to the warehouse, where witness was, and stated that Mitchell’s name had been promised on it. A short time thereafter, the witness presented the note to Mitchell, and obtained his endorsement on it — Mitchell did not hear McLean state that his name had been promised on the note. A. H. Cromwell, provéd that he did the business of the firm in bank; that he handed to the cashier, McLean, the note, and check, the 1st or 2d of February; — that nothing was said about an additional endorser, and that he had never said anything to Mitchell about endorsing the note, nor did he promise McLean, that it should be endorsed by Mitchell.
William Broadus proved that he was a director of the bank, when the note was discounted, and he thought the note was presented to the board at a called meeting, on the 1st of February, that McLean said Cromwell had assured him, Mitchell’s name should go on the note, that the board instructed McLean to take the note, provided Mitchell’s name should be put on it; — that the regular meeting of the board was on Thursday, the 3d of February, at which time, witness saw the note, *222 and thinks Mitchell’s name was on it.* James McClure proved that he was a director of the bank in February, 1842; that when the note was offered for discount, the 1st of February, he was present; that the directors refused to discountit; that the board was told that Mitchell would endorse the note, and they instructed McLean, the cashier, to receive the note, and pay over the proceeds in so 'much discharge of the $5000, if Mitchell should endorse it. There was no rule of the bank, authorizing the cashier to receive a note in payment of a debt due the bank unless it was first presented to the board. The note was discounted on condition that Mitchell would endorse it. The defendant objected to the witness’ statement, as to the statement of McLean to the board, that Cromwell had promised that Mitchell should endorse the note.
The court charged, “that if the books of the bank show that the note sued upon was discounted before Mitchell endorsed it; and the proceeds were drawn out on the check of Terry, still that the bank might show that the directors discounted it upon condition that Mitchell’s endorsement was had, and that it was competent for the bank through its directors, to discount it conditionally; — and if the note was discounted upon condition that Mitchell’s endorsement was procured upon it, Mitchell would be bound upon his endorsement made after the proceeds was checked out by Terry, whether he knew or not, that his name was promised upon the note.” The jury found for the plaintiff, and the defendant appealed to this court.
1. It is now insisted that the court erred in charging the jury that Mitchell was bound by his endorsement, made after the note was discounted, whether he knew his name was promised or not, — if the note was discounted upon condition that Mitchell’s endorsement was procured upon it. We do not think his honor erred in his instruction to the jury. He left the question of fact, whether the original contract was complete before the *223 plaintiff in error, endorsed the note, — fairly to the jury, to be decided by them, upon the evidence. And we think he stated the law correctly, upon the hypothesis suggested in the instruction. It was unquestionably, competent for the board of directors to agree to~ accept the note offered, pn condition the name of Mitchell should be procured upon it. And unless this condition were complied with, the note could not be regarded as having been discounted, and the bank might .proceed upon the old note. If for want of demand and notice, the endois-ers upon the old note were not fixed — the bank might have elected to sue the drawer of that note forthwith; or the note as offered, with the two endorsers only might have been re-* ceived, unconditionally, as the best that could be done.
But whatever course the bank might have pursued, in case Mitchell’s name had not been obtained, is a matter of no consequence, in considering the character of the contract, as it was actually made. If the note was discounted, upon condition that Mitchell would endorse it, and in pursuance of this arrangement, he did endorse it, his endorsement would constitute a part of the original contract, which contract was not complete, until the name of Mitchell was placed upon the note. Nor was Mitchell at all injured by this arrangement. The fact, that the directors were told he would endorse the note, and their agreement to discount it on that condition, could not affect his perfect freedom of will, either to endorse it, or not, as he might choose. Nor could the absence of knowledge on, his part, that his name had been promised, in the least degree, influence his conduct. The suggestion, therefore, that this conditional arrangement, was a fraud upon Mitchell, is without foundation.
The authorities cited for the plaintiff in error, establish, beyond doubt, that a promise must have a consideration to support it: — ^nd that if a party agree to be liable for an obligá- *224 lion already existing between other parties, there must be a new consideration, passing at the time. But that question does not arise in this case. Iiis honor told the jury, that if the directors discounted the note, on condition, Mitchell’s name should be obtained upon it, he would be bound by his endorsement. ' In the case put by the court, Mitchell’s endorsement constituted part of the contract, by which the proceeds of this note were to be applied to the credit of the makers. That contract was not complete, until the condition was performed; and when his endorsement was made, the makers were to be entitled to the proceeds of the note; so, that the proceeds of the note, received by the makers, constituted the consideration for Mitchell’s endorsement, made for their accommodation.
2. It is objected, that the court permitted the plaintiff to prove that at the time the note was offered for discount, McLean, the cashier, informed the directors, that Cromwell had promised Mitchell’s name on the note. It is insisted, this is hearsay testimorfy, and therefore incompetent-.
We think this evidence was clearly admissible. It was part of the res gesta, and is necessary for explaining the character of the contract, and the consent of the directors, that the note should be discounted, on condition, the promise so communicated to them should be fulfilled.
There is no error in the record, and the judgment will be affirmed.